**In the Matter of the WELFARE OF the Child of T.D., a/k/a T.B., Parent.**

**No. A06–2109.**

Court of Appeals of Minnesota.

May 22, 2007.

Leonardo Castro, Hennepin County Public Defender, Barbara S. Isaacman, Assistant Public Defender, Minneapolis, MN, for appellant T.D.

Michael O. Freeman, Hennepin County Attorney, C–2000 Government Center, and Michelle A. Hatcher, Assistant County Attorney, Minneapolis, MN, for respondent Hennepin County Human Services and Public Health Department.

Bruce Jones, Lianne C. Knych, Faegre & Benson, LLP, Minneapolis MN, for guardian ad litem.

Considered and decided by ROSS, Presiding Judge; TOUSSAINT, Chief Judge; and KLAPHAKE, Judge.

## OPINION

ROSS, Judge.

The district court terminated T.D.'s parental rights to her fifth child after finding that she failed to rebut the presumption of parental unfitness that arose when she involuntarily transferred custody of her fourth child and that four other statutory grounds supported termination. T.D. challenges the termination, arguing that the district court erred by taking judicial notice of the involuntary-transfer order and that she overcame the presumption of unfitness. We hold that the district court properly relied on the involuntary-transfer order and that T.D. did not introduce sufficient evidence to overcome the presumption. Because the record establishes a statutory ground for termination of parental rights, we affirm the district court. Because T.D. submitted material outside the record on appeal and Minnesota courts have not created an exception in termination-of-parental-rights cases that would permit this court to consider the material, we grant the guardian ad litem's motion to strike.

## FACTS

T.D.'s history with child-protection services spans nearly fifteen years and crosses four counties. This appeal arises from the termination of parental rights to her fifth child.

T.D. first gave birth in 1993. Dakota County opened a child-protection case the same year because of allegations of child abuse concerning the baby's father. In 1995, T.D. agreed to a court order appointing her father as the boy's guardian. T.D. had two more sons with another man (her husband at the time) in 1997 and 1999. T.D. was convicted of fifth-degree assault for striking the older boy with a closed fist when he was about four years old. Sherburne County opened a child-protection case, but closed it because the boys' father took custody of the children. T.D.'s fourth son was born in February 2004 and was removed from the home within days. An Anoka County district court later found the child in need of protection or services after T.D. admitted to the allegations in the county's child-protection petition. T.D. initially complied with parts of her case plan, but soon ceased contact with her social worker and moved to Missouri in August 2004. The county petitioned to transfer legal custody to the child's father. T.D. failed to attend the November 2004 hearing to admit or deny the petition, resulting in a default judgment. In February 2005 the court ordered the involuntary and permanent transfer of custody to the boy's father. The Anoka County records indicate that T.D. has a significant history of poor mental health and domestic violence.

In October 2005 T.D. gave birth to her fifth child, a girl, who is the subject of this appeal. Five days later, the Hennepin County Human Services and Public Health Department filed a petition to terminate T.D.'s parental rights or transfer custody of her infant daughter. T.D. began working on a case plan that became court-ordered in February 2006 when the district court found her daughter to be in need of protection or services. The case plan required T.D. to follow the recommendations of a parenting assessment and psychological evaluation she had already completed, to participate in individual therapy, and to maintain safe and suitable housing. In May 2006, the department filed a new petition to terminate T.D.'s parental rights. The department alleged four statutory grounds for termination. It also moved the district court to take judicial notice of the Dakota and Anoka County orders transferring custody of T.D.'s other children, as well as the court's own order finding T.D.'s daughter in need of protection or services.

During the hearing on the department's permanency petition, the district court heard testimony from T.D.'s parenting instructor, a child-protection social worker, and the guardian ad litem. Each testified that termination of parental rights is in the child's best interests. They acknowledged T.D.'s strong attendance record for her case-plan appointments and recognized that she had made improvements. But they noted that, despite six months of twice-weekly parenting classes, four months of weekly in-home parenting instruction, and having had four other children, T.D. continued to struggle with basic parenting skills and was generally unreceptive to advice. The court also heard testimony from Seymour Gross, a clinical psychologist retained by the public defender's office to conduct a second psychological evaluation. Dr. Gross testified that many of T.D.'s perceived limitations are the product of hearing loss and that individual and group therapy would likely benefit her. The department noted that most

of his recommended services were already in place.

In August 2006, the district court terminated T.D.'s parental rights. The court took judicial notice of the three requested orders, and it found that, based on the February 2005 involuntary transfer of custody of her fourth son, she was presumed palpably unfit. The court found that she had failed to rebut this presumption, and it held that the record supported terminating T.D.'s rights on five statutory grounds. It denied T.D.'s motion for a new trial. T.D. appeals, challenging the district court's decision to take judicial notice of, and rely on, the Anoka County order, and she disputes whether sufficient evidence supports terminating her parental rights.

## ISSUES

I. Did the district court err by taking judicial notice of another county's order involuntarily transferring custody of another child of the parent?

II. Does the record support the district court's decision to terminate the mother's parental rights?

III. Should an appellate court consider submissions that are outside the district court record in an appeal from the termination of parental rights?

## ANALYSIS

### I

■ T.D. challenges the district court's taking judicial notice of the February 2005 Anoka County order involuntarily transferring custody of T.D.'s fourth son. She raises belated due-process objections to that previous transfer of custody and contends that the judgment should have been deemed inadmissible in this case. A court may take judicial notice of a fact not subject to reasonable dispute when the

fact is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Minn. R. Evid. 201(b). Judicial notice expedites litigation because it avoids the time and expense required to formally prove factual matters determinable from unquestionable sources of information. *Fluoroware, Inc. v. Chubb Group of Ins. Cos.*, 545 N.W.2d 678, 684 (Minn.App.1996) (quotation omitted). A court may take judicial notice of a fact at any stage of the proceeding and may do so both on its own initiative and when requested by a party that supplies the court with the information. Minn. R. Evid. 201(c)-(d), (f).

■ T.D. raised her challenge too late. The department moved for judicial notice more than one month before the hearing. T.D. did not contest the motion until she sought a new trial. We will not consider matters not presented to the district court, and a party may not raise an issue for the first time in a new-trial motion. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (stating that appellate court will not consider matters not argued and considered by district court); *Ellingson v. Burlington N. R.R. Co.*, 412 N.W.2d 401, 405 (Minn.App.1987) (stating that party may not first raise issue in new-trial motion), *review denied* (Minn. Nov. 13, 1987). We therefore find this issue waived on appeal.

### II

■ T.D. next challenges the bases for the district court's decision to terminate her parental rights. A district court may involuntarily terminate parental rights when clear and convincing evidence supports a statutory basis for termination. Minn. R. Juv. Prot. P. 39.04, subd. 1; *see also* Minn.Stat. § 260C.301, subd. 1(b) (2006) (listing grounds for involuntary termination of parental rights); *In re Welfare*

*of the Children of R.W.*, 678 N.W.2d 49, 55 (Minn.2004) (stating that only one statutory basis is needed to support termination). Whether termination meets the child's best interests is the paramount consideration. Minn.Stat. § 260C.301, subd. 7 (2006). A court may not terminate parental rights unless it also finds that social-service agencies made reasonable efforts to reunify the parent and child. *Id.*, subd. 8(1) (2006). The court must make its decision based on evidence concerning the "conditions that exist at the time of termination and it must appear that the conditions giving rise to the termination will continue for a prolonged, indeterminate period." *In re Welfare of P.R.L.*, 622 N.W.2d 538, 543 (Minn.2001). We will therefore affirm the district court's decision when clear and convincing evidence supports the decision and the termination is in the child's best interests. *R.W.*, 678 N.W.2d at 55.

One basis for terminating parental rights is palpable unfitness by the parent to be a party to the parent-child relationship. Minn.Stat. § 260C.301, subd. 1(b)(4). When a parent's custodial rights to a different child were involuntarily transferred, the parent is presumed palpably unfit. *Id.* T.D. suggests that even if the district court properly took judicial notice of the prior involuntary transfer-of-custody order, the court should not have relied on the order to invoke the presumption of unfitness. The caselaw that T.D. offers does not support this view, and we decline to adopt her proposition. Because the district court appropriately took judicial notice of the Anoka County order, the court did not err by applying the presumption to T.D.

A parent must rebut a presumption of unfitness. *In re Welfare of D.L.R.D.*, 656 N.W.2d 247, 250–51 (Minn. App.2003). The district court need not establish an independent reason to terminate because it is the parent's burden to "affirmatively and actively demonstrate her or his ability to successfully parent a child." *Id.* On appeal, T.D. argues for a different application of the presumption, arguing that a parent need only produce some evidence of fitness to negate the presumption. T.D. correctly points to the rules of evidence, which provide that "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof." Minn. R. Evid. 301. But rule 301 does not conflict with our previous applications of the presumption of parental unfitness. In the context of termination-of-parental-rights cases, the assumed fact is *unfitness.* Although the burden of persuasion remains with the county, to rebut the presumption a parent must introduce sufficient evidence that would allow a factfinder to find parental *fitness. See id.* 1977 comm. cmt. (stating that presumption no longer functions when party introduces evidence sufficient to justify a finding of fact contrary to the assumed fact); *In re Child of A.S.*, 698 N.W.2d 190, 194, 196 (Minn.App.2005) (stating that applying presumption of unfitness shifts burden to parent to prove fitness and rebut presumption), *review denied* (Minn. Sept. 20, 2005).

Because we conclude that T.D. did not present sufficient evidence to support a finding of parental fitness, we agree with the district court that she did not rebut the presumption of unfitness. T.D. complied with her case plan in terms of attending appointments, but the service providers testified that she had failed to demonstrate significant or commensurate progress in her parenting skills. Even after many months of parenting classes and in-home instruction, service providers had to re-

peatedly remind her how to prepare a bottle and care for her daughter after feeding her. They explained that T.D. struggles to read her daughter's cues and react appropriately. T.D. also struggles to multitask, and supervisors have observed her child fall or nearly fall because T.D. did not pay attention to her or physically support her appropriately. Although T.D. could state the phases of child development, testifying observers doubted that she can adjust to these phases in practice. The guardian noted that T.D. has difficulty learning basic skills, and her daughter's needs are changing faster than T.D. can keep pace. The guardian acknowledged that some of the cited events might not warrant as much serious concern in isolation, but she explained that the repetition and combination of concerns put T.D.'s daughter at risk.

The service providers also expressed concerns about T.D.'s ability to manage inevitable stress. T.D. becomes frustrated and angry easily, often leaving the room. The guardian noted that T.D.'s daughter is too young to be left alone. The court allowed T.D. to have unsupervised visits in June 2006. Of the three visits, a child-services worker cancelled one because of his concerns about T.D.'s agitated behavior.

T.D. was living in a homeless shelter when her daughter was born, but moved into an apartment in November 2005. Service providers have stressed from the outset that T.D. needs a strong support network to become a successful parent. The parenting assessment recommended that T.D. be surrounded "with as many effective supports as possible. A semi-supervised setting ... where a [social worker] is available may be a possibility." T.D. declined an open spot in a supportive-housing center early in her case plan and was adamant about remaining in her apartment, although the record is unclear as to the gravity with which the county presented this option to her. Her parenting instructor explained that a supportive-living environment would enable her to receive feedback 24 hours a day and provide the necessary parenting support. But T.D. has few supportive individuals. When she filled out a form asking who she would trust with her daughter, T.D. wrote, "not at this time." She reported having one friendship, but has represented to service providers that she has no friends.

T.D. indicated that in an emergency she would call her mother or her daughter's current foster parent. But her mother lives more than one hour away and they have a strained relationship, and the foster mother lives twenty to thirty minutes away and does not drive. The record supports the court's finding that T.D. will be unable to be a full-time parent to her daughter on her own within the reasonably foreseeable future.

T.D. did not testify and presented only Dr. Gross's testimony and his psychological evaluation. Dr. Gross commented on T.D.'s emotional responses and frustration when she faced critical parenting feedback. Although Dr. Gross suggested that the service providers should adapt to T.D.'s learning style more when offering their feedback, he admitted that a child will not communicate only in ways that do not frustrate her mother. T.D. argues on appeal that the district court undervalued Dr. Gross's testimony and overvalued T.D.'s first psychological evaluation. We defer to the district court's determinations of witness credibility and the weight to be given to the evidence. *In re Welfare of L.A.F.*, 554 N.W.2d 393, 396 (Minn.1996). T.D. also asserts that the guardian ad litem "had no life experiences to guide her decision making and little experience as a guardian." This assertion is unpersuasive.

The guardian completed guardian-ad-litem training in 2003, she participates in monthly ongoing training sessions, and she has worked on seven cases involving thirteen children. She has a bachelor's degree in youth social sciences, which required studies in psychology, counseling, and youth. T.D.'s uncompelling and unsupported insight into the guardian's allegedly insufficient personal experiences offers no basis to question the district court's reliance on her opinion.

The district court's findings are rooted in the observations and testimony of providers who worked with and observed T.D. for many months. Although the record demonstrates that T.D. made progress, she failed to rebut the presumption of palpable unfitness by putting forth evidence that could establish parental fitness. While a different factfinder may have weighed the evidence differently, based on its supported findings the district court did not err by terminating T.D.'s parental rights on this statutory ground.

In addition to palpable unfitness, the department alleged three other grounds for terminating T.D.'s parental rights. *See* Minn.Stat. § 260C.301, subd. 1(b)(2), (5), (7) (stating grounds for terminating parental rights). Although the district court found that clear and convincing evidence supported the additional grounds, the court also found that T.D.'s daughter is neglected and in foster care, relying on subdivision 1(b)(8) of section 260C.301. But a court may not terminate parental rights on a ground that is not stated in a petition to terminate rights. *See* Minn. R. Juv. Prot. P. 39.05, subd. 3(a) (stating that court may terminate parental rights after concluding that "the statutory grounds set forth in the petition are proved"); *In re Staat*, 287 Minn. 501, 505, 178 N.W.2d 709, 712 (1970) (rejecting one of district court's grounds for termination of parental rights

in part because district court relied on ground not alleged in petition). A parent must have notice of a claim and an opportunity to oppose it. *See Folk v. Home Mut. Ins. Co.*, 336 N.W.2d 265, 267 (Minn. 1983) (requiring district court to base relief on issues either raised by pleadings or litigated with consent). Because at least one statutory ground supports termination in this case, however, the error does not affect our decision to affirm the termination of T.D.'s parental rights.

The record also supports the district court's findings on reasonable efforts and the best interests of the child. The department provided T.D. with twice-weekly parenting courses, weekly in-home parenting instruction, and supervised and unsupervised visits with her child. The department also referred T.D. to anger-management classes, which she completed, and offered her a position in a supportive-housing environment, which she declined. The child-protection social worker testified that the department did not make a referral for individual therapy because the first psychological assessment suggested it would not benefit T.D.

T.D. contends that the department "rushed to trial." But the permanency hearing occurred after her daughter had been in an out-of-home placement for nearly her entire life, about nine months. When a child under eight years is placed outside the home, a permanency hearing to assess progress generally should be held within six months of the placement. Minn. Stat. § 260C.201, subd. 11a (2006). The court recognized T.D.'s love for her daughter and her progress, but it noted that even Dr. Gross did not suggest a timeline within which T.D. could successfully parent her child. The record supports the district court's finding that termination of parental rights was in the child's best interests.

### III

■ T.D. attached to her reply brief a March 2007 letter from Dr. Gross to update the court on T.D.'s progress. The guardian has moved to strike the attachment and references to the document within the brief. The motion is well founded.

■ The record on appeal consists of "[t]he papers filed in the trial court, the exhibits, and the transcript of the proceedings." Minn. R. Civ.App. P. 110.01. The court generally will not base its decision on matters outside the record on appeal, and it will not consider matters that were not produced and received in evidence in the district court. *Thiele*, 425 N.W.2d at 582–83. If a party's brief includes documents that are outside of the appellate record, we will strike the documents. *Fabio v. Bellomo*, 489 N.W.2d 241, 246 (Minn.App.1992), *aff'd* 504 N.W.2d 758 (Minn.1993).

■ T.D. relies on two cases to support her contention that we may consider matters outside the record in a termination-of-parental-rights appeal. Neither case supports her assertion. In one case, the supreme court acknowledged that its decision to vacate a termination of parental rights was "admittedly influenced by the disclosures that [the mother was] presently caring for her second child and that the proposed plan for [the child in need of protection or services's] placement ha[d] been ineffective, facts not available to the juvenile court." *In re Welfare of Chosa*, 290 N.W.2d 766, 769 (Minn.1980). But the court explained that "the hearing record also supports our conclusion in this case." *Id.* The *Chosa* court also emphasized that evidence in a termination-of-parental-rights case "must address conditions that exist at the time of the hearing." *Id.* T.D. also mischaracterizes this court's holding in *In re Welfare of B.W.*, 454 N.W.2d 437 (Minn.App.1990), by suggesting that *B.W.* is part of a "long recognized ... exception in permanency proceedings" concerning our scope of review on appeal. In stating the facts of the case, the *B.W.* court noted that "[i]t was revealed at oral argument that [the father] underwent chemical dependency treatment in prison; he is now living in a halfway house in St. Paul and attending college." *Id.* at 441–42. But the legal issues in the case plainly related to whether the district court should have transferred jurisdiction to the tribal court. The father's post-termination progress was unrelated to the legal issues, analysis, and holding.

Contrary to T.D.'s representations, *Chosa* and *B.W.* do not create an exception to the general principle that this court will not consider matters outside the district court record. Because the letter is not properly before the court, we grant the guardian's motion to strike the letter and references to it in T.D.'s reply brief.

### DECISION

The district court properly took judicial notice of the Anoka County order involuntarily transferring custody of T.D.'s fourth child and invoked the presumption of parental unfitness. T.D. failed to rebut this presumption. Because the county established a statutory ground for termination, we affirm the termination of T.D.'s parental rights. Because T.D.'s reply brief includes a document outside the record on appeal, we grant the guardian's motion to strike the document and references to the document.

**Affirmed; motion granted.**