*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1273**

In the Matter of the Welfare of the Children of: K. M. and K. W., Parents,

W. W.,
Intervenor

**Filed December 28, 2015
Affirmed
Larkin, Judge**

Lyon County District Court
File No. 42-JV-15-87

Robert L. Gjorvad, Runchey, Louwagie & Wellman, P.L.L.P., Marshall, Minnesota (for appellants)

Richard R. Maes, Lyon County Attorney, Nicole A. Springstead, Assistant County Attorney, Marshall, Minnesota (for respondent Lyon County)

Kyle Kosieracki, Tarshish Cody, PLC, Richfield, Minnesota (for intervenor)

Betty Schoephoerster, Marshall, Minnesota (guardian ad litem)

Considered and decided by Bjorkman, Presiding Judge; Worke, Judge; and Larkin, Judge.

**UNPUBLISHED OPINION**

**LARKIN**, Judge

Appellants challenge the district court's order terminating their parental rights. We affirm.

# FACTS

Appellant-mother K.M. and appellant-father K.W. are the parents of three children: S.W., born in 2006; K.W., born in 2008; and S.W., born in 2011. Mother, father, and their three children lived with the children's paternal grandmother, W.W., in Marshall. Southwest Health and Human Services was concerned regarding domestic disputes between mother and father, drug use in their home, and the general condition of the home, which was reportedly cluttered with clothes, spoiled food, garbage, and feces.

A child-protection petition was filed in September 2012, and the district court adjudicated the children in need of protection or services. Mother and father eventually moved with their children to an apartment but were later evicted. They then moved to a house on Williams Street. The district court adopted multiple case plans for the parents, which included diagnostic mental-health assessments, anger-management counseling, and family therapy, as well as requirements that the parents keep their home clean and appropriate, refrain from domestic violence, abstain from drug and alcohol use, and submit to random urinalysis testing. After a June 30, 2014 review hearing, the district court found that the parents had failed to make progress on their case plans. After a September 22 review hearing, the district court found that the parents had been uncooperative.

Later, the parents were arrested and charged with felony methamphetamine possession for possessing more than 15 grams of methamphetamine in their Williams Street home when the children were present. They were also charged with possession of drug paraphernalia. The district court held an emergency protective-care hearing on

November 25, and ordered that the children be placed out of the parents' home and in foster care.

The district court adopted an out-of-home case plan in December, requiring the parents to complete diagnostic mental-health, chemical-use, and anger-management assessments and to abide by any ensuing recommendations; to remain free of mood-altering chemicals including alcohol; to maintain relationships with the children, attend scheduled visits with the children, and maintain phone contact with the children; and to obtain appropriate housing. The parents failed to remain drug and alcohol free, to attend all scheduled visits with the children, to obtain housing, and to complete chemical-dependency treatment. Southwest Health and Human Services petitioned to terminate the parents' parental rights, and the parents denied the petition.

The district court held a termination trial in June 2015 and found that Southwest Health and Human Services made reasonable efforts to reunite the parents with their children, including child-protection case-management services, parenting-education services, supervised visitation, transportation services, chemical-dependency assessments and treatment, referrals for parenting classes, family-group-decision-making conferences, urinalysis testing, in-home family counseling, foster parenting, hair-follicle testing, medical assistance, financial assistance, individual therapy, payments for mental-health care, parenting time for family members, and appointments to assist with case-plan compliance.

The district court found that the parents consistently failed to comply with the case-plan components. After the children were placed out of the home, the parents were in jail

3

multiple times for drug use. At the time of the termination trial, father was in jail, unemployed, and lacked housing. Father was offered treatment two or more times and had recently declined chemical-dependency treatment after his chemical-health evaluation recommended inpatient treatment. Father completed a diagnostic assessment but did not obtain the recommended mental-health care. Father did not complete an anger-management course. Father failed to maintain adequate contact with the children. He lost visits by not following the visitation center's rules and declined additional visits offered by his social worker. He missed court hearings and skipped visits while on warrant status. He missed visits while in jail for drug use. Father was uncooperative with his social worker and the children's guardian ad litem. Sometimes he was angry and would scream, swear, and yell at the social worker. Notably, father attended a church program where the children were present with their foster parents and he failed to recognize his own children. Father continued to use illegal drugs after his arrest and had been jailed four times for violating release conditions.

By the time of the termination trial, father had been found guilty of second-degree controlled-substance crime, a methamphetamine-related crime involving children, and child endangerment. Father had not been sentenced, but he faced a presumptive commitment to prison under the Minnesota Sentencing Guidelines. At the termination trial, father testified that he and mother did not use drugs at the same time, and that one of them would stay with the children while the other one used drugs. Father testified that they used drugs in the basement and would not let the children enter the basement.

By the time of trial, mother was unemployed, lacked housing, and was in a chemical-dependency treatment facility. Mother was slow to enter treatment and did not begin treatment until about two weeks before trial. Mother continued to use drugs even after her initial arrest and had been arrested on at least two more occasions for positive drug-test results. Mother missed some visits with the children because she was in jail for drug use. She failed to maintain a working phone to stay in contact with the children, and she declined additional visits with the children offered by her social worker. Mother had pleaded guilty to a second-degree controlled-substance crime, but she had not been sentenced.

The district court found that the parents neglected the children's educational needs. For example, school papers were lost and the parents did not reliably attend school conferences. The district court also found that the parents neglected the children's dental needs. The children needed significant dental work when they entered foster care, and their gums would bleed when they brushed their teeth. The district court found that the parents kept drugs in their home, used the drugs in the home while the children were present, were unconcerned with their drug use, and did not understand that their drug use was a threat to their children.

The district court found that the parents' "failure to complete the case plan as to mental health issues, anger management issues, chemical dependency issues and available contact with the children indicates that the parents substantially, continuously, or repeatedly refused or neglected to comply with the duties imposed upon the parent[s] by

5

the parent child relationship." The district court also found that "there is no basis to conclude that any of these matters will change in the foreseeable future."

The district court concluded that the parents "have substantially, continuously, or repeatedly refused or neglected to comply with the duties imposed upon the parent by the parent/child relationship," and that "reasonable efforts by the social services agency have failed to correct the conditions that form the basis of the petition and reasonable efforts would be futile in the future and, therefore, unreasonable." The district court further concluded that "following the children's placement out of home, reasonable efforts under the direction of the court have failed to correct the conditions leading to the children's placement," and that "the children have been neglected and in foster care."

The district court also concluded that termination of parental rights is in the children's best interests. The district court acknowledged that the children would "naturally be interested in preserving the parent/child relationship" and that the parents "verbalize a desire to maintain the parent/child relationship." But the district court reasoned that, in foster care, the children were in a safer, drug-free environment; the children have flourished in an environment that is not filled with chaos and is safe from exposure to drugs; the children have benefited from regular meals, improved dental care, regular school attendance, and improved academic performance; the parents have been absent from the children a significant amount of time; the parents have not adequately supported the children's school needs; the parents have not adequately attended to the children's dental needs; the parents have not attended to the youngest child's speech needs;

6

the parents repeatedly exposed the children to drugs; and that the parents have demonstrated no interest in changing their behaviors.

The district court terminated mother's and father's parental rights to the children. The parents appeal.[1]

**D E C I S I O N**

"[P]arental rights may be terminated only for grave and weighty reasons." *In re Welfare of Child of W.L.P.*, 678 N.W.2d 703, 709 (Minn. App. 2004). A district court's decision in a termination proceeding must be based on evidence concerning the conditions that exist at the time of trial. *In re Welfare of Child of T.D.*, 731 N.W.2d 548, 554 (Minn. App. 2007), *review denied* (Minn. July 17, 2007). An appellate court "exercises great caution in termination proceedings, finding such action proper only when the evidence clearly mandates such a result." *In re Welfare of S.Z.*, 547 N.W.2d 886, 893 (Minn. 1996). On appeal, we examine the record to determine whether the district court applied the appropriate statutory criteria and made findings that are not clearly erroneous. *In re Welfare of D.L.R.D.*, 656 N.W.2d 247, 249 (Minn. App. 2003). A finding is clearly erroneous when "it is either manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *In re Welfare of Children of T.R.*, 750 N.W.2d 656, 660-61 (Minn. 2008) (quotation omitted). We give the district court's decision to terminate parental rights considerable deference, but we "closely inquire into

---

[1] Paternal grandmother W.W. petitioned for legal and physical custody of the children. W.W.'s petition was tried as an alternative to termination of parental rights. The district court denied W.W.'s petition. Neither parent nor W.W. challenges the district court's denial of W.W.'s petition.

7

the sufficiency of the evidence to determine whether it was clear and convincing." *In re Welfare of Children of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008).

An appellate court will affirm the district court's decision to terminate parental rights if the department made reasonable efforts to reunite the family, at least one statutory ground for termination is supported by clear-and-convincing evidence, and termination is in the best interests of the child. *Id.* In this case, the district court concluded that Southwest Health and Human Services made reasonable efforts to reunite the parents with their children. The district court identified the following three statutory grounds for termination: Minn. Stat. § 260C.301, subd. 1(b)(2), (5), (8) (2014), which respectively provide that the district court may terminate parental rights if "the parent has substantially, continuously, or repeatedly refused or neglected to comply with the duties imposed upon that parent by the parent and child relationship"; "following the child's placement out of the home, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the child's placement"; or "the child is neglected and in foster care." And, the district court concluded that termination of the parents' parental rights is in the children's best interests.

The parents argue that none of the three statutory grounds for termination is supported by clear-and-convincing evidence.[2] At least one statutory ground for termination must be supported by clear-and-convincing evidence. *S.E.P.*, 744 N.W.2d at 385. We first review the district court's determination under Minn. Stat. § 260C.301, subd.

---

[2] The parents do not challenge the district court's reasonable-efforts determination or its best-interests analysis.

8

1(b)(2). A district court may terminate parental rights to a child if the district court finds that the parent

> has substantially, continuously, or repeatedly refused or neglected to comply with the duties imposed upon that parent by the parent and child relationship, including but not limited to providing the child with necessary food, clothing, shelter, education, and other care and control necessary for the child's physical, mental, or emotional health and development, if the parent is physically and financially able, and either reasonable efforts by the social services agency have failed to correct the conditions that formed the basis of the petition or reasonable efforts would be futile and therefore unreasonable.

Minn. Stat. § 260C.301, subd. 1(b)(2).

The parents argue that there was "little, if any, evidence that [they] failed to provide necessary food, clothing, shelter, education or other care and control necessary for the children's physical, mental or emotional health and development." The parents' argument is unavailing. The record shows that the parents used drugs in their home while the children were in the home. The children were removed after the police found 15 grams of methamphetamine in the home. After the parents were charged with drug possession and their children were removed from their care, they continued to use drugs, they were at times in jail or on warrant status, and they failed to complete chemical-health treatment, as well as other case-plan services that were intended to correct the conditions that contributed to the children's out-of-home placement.

"Failure to satisfy requirements of a court-ordered case plan provides evidence of a parent's noncompliance with the duties and responsibilities under section 260C.301, subdivision 1(b)(2)." *In re Welfare of Children of K.S.F.*, 823 N.W.2d 656, 666 (Minn.

App. 2012). The parents' social worker testified extensively regarding the parents' failure to comply with the out-of-home case plan. She testified that both parents completed a chemical-health evaluation, but that neither had completed treatment. She testified that mother tested positive for methamphetamine three times after the children were removed from home and that father tested positive for either methamphetamine or marijuana four times. She testified that mother obtained a diagnostic assessment in 2012 or 2013 to address her mental-health needs but did not follow through with individual therapy. Mother did not complete a new diagnostic assessment as required under the out-of-home case plan. And mother did not start an anger-management course.

The social worker also testified that father obtained a diagnostic assessment but did not follow through with individual therapy. She testified that father did not complete an anger-management class. As to maintaining a relationship with the children, the social worker testified that "until recently," the parents visited the children if they were not in jail. She testified that father missed visits when he was "on the run." She testified that in May, one of father's visits was postponed and two were cancelled because he was late. She also testified that initially both parents failed to maintain phone contact with the children because they would change phone numbers or their phones did not work. She testified that "it got much better for a while," but "now with them either being in jail or treatment a little bit more often in the last month, it's gotten more difficult."

On this record, there is clear-and-convincing evidence that the parents substantially, continuously, or repeatedly refused or neglected to comply with their parental duties as a result of their ongoing drug use and untreated chemical-dependency issues. There is also

clear-and-convincing evidence that the parents are not able to comply with their parental duties in the foreseeable future. *See In re Welfare of H.K.*, 455 N.W.2d 529, 533 (Minn. App. 1990) ("[Mother's] unwillingness to complete any of the goals of her placement plan provides clear and convincing evidence that the present conditions of neglect will continue for a prolonged and indeterminate time."), *review denied* (Minn. July 6, 1990). Because the district court's determination under section 260C.301, subdivision 1(b)(2) is supported by clear-and-convincing evidence, we affirm the termination order without reviewing the district court's reliance on other statutory grounds. *See S.E.P.*, 744 N.W.2d at 385 (stating that at least one statutory ground for termination must be supported by clear-and-convincing evidence).

**Affirmed.**