In the Matter of the Welfare of
D.L.R.D., a/k/a D.L.R.H.,
Child.

No. C3–02–972.

Court of Appeals of Minnesota.

Feb. 4, 2003.

Timothy Aldrich, Grand Rapids, MN, for appellant.

John J. Muhar, Itasca County Attorney, Mary J. Evenhouse, Assistant County Attorney, Grand Rapids, MN, for respondent.

Considered and decided by KLAPHAKE, Presiding Judge, MINGE, Judge, and WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

Appellant challenges the termination of her parental rights, arguing that (1) she rebutted the statutory presumption that she is palpably unfit, (2) the county failed to develop a case plan and make reasonable attempts to reunite appellant with her child, and (3) the record does not show that it is in the child's best interests to terminate appellant's parental rights. We affirm.

## FACTS

While this case concerns the termination of appellant D.D.'s parental rights to D.L.R.D., her fourth child, D.D.'s actions regarding the first three children born to her are relevant. In 1995, D.D.'s parental rights to her first two children were involuntarily terminated based on the determination that she was palpably unfit to parent these children. After having a third child, W.H., in 2000, D.D. applied for economic assistance from Itasca County. As a result, Itasca County Health and Human Services (ICHHS), aware of the prior terminations, twice contacted D.D. to offer her parenting assistance. D.D. refused this assistance. Instead, she took W.H. to New Jersey, where she placed him in the care of one of her sisters. Because W.H. was abused while in his aunt's home, a second sister removed W.H. from the abusive home and, in 2001, successfully petitioned a New York court for legal custody of W.H. D.D. has neither visited W.H. nor provided him with any financial support since she left him in New Jersey in 2000.

When D.D. became pregnant with her fourth child, D.L.R.D., ICHHS again attempted to offer services to D.D. On August 10, 2001, an Itasca County social worker sent D.D. a letter requesting that she contact ICHHS, which she declined to do. The Occupational Development Center, an agency to which D.D. had been referred, offered her services to help her obtain a driver's license, job-seeking skills, and housing assistance. D.D. failed to use any of these services.

D.L.R.D. was born on December 22, 2001. After D.L.R.D.'s birth, an Itasca

County social worker stopped by D.D.'s home to speak with her about social services. Finding no one at home, the social worker left a note on D.D.'s door. D.D. later alleged falsely that the social worker unlawfully entered her home, stole baby formula, and turned off the heat. On January 18, 2002, based on the involuntary termination of D.D.'s parental rights to her first two children, ICHHS removed D.L.R.D. from D.D.'s home.

On February 28, 2002, ICHHS and the Itasca County Attorney petitioned the district court to terminate D.D.'s parental rights to D.L.R.D. Because of the prior involuntary termination, ICHHS moved the district court to be relieved of its duty to make reasonable efforts to reunify D.D. with D.L.R.D. The district court granted this motion, finding that D.D. was presumed to be palpably unfit as a parent because her parental rights to her first two children had been involuntarily terminated.

A hearing on the termination petition was held in April 2002. The evidence established that D.D. attended all but two supervised visits with D.L.R.D. and attended half of the parenting classes in which she had enrolled with the assistance of her attorney. D.D. had two psychological evaluations and was diagnosed with an unspecified personality disorder, presenting prominent antisocial and paranoid features and possible schizotypal features. D.D. was taking prescribed medication daily to address the personality disorder. On the last day of trial, despite denying the use of illegal drugs, D.D. tested positive for marijuana.

The district court terminated D.D.'s parental rights to D.L.R.D. on May 17, 2002, concluding that D.D. is palpably unfit to parent D.L.R.D. and that it is in D.L.R.D.'s best interests that D.D.'s pa-

rental rights be terminated. This appeal followed.

## ISSUES

I. Did the district court err when it determined that appellant failed to rebut the statutory presumption that she is palpably unfit to be a party to the parent-child relationship?

II. Are reasonable efforts for rehabilitation and reunification required when the parent's parental rights to another child have been involuntarily terminated?

III. Did the district court err in determining that termination of appellant's parental rights is in the best interests of D.L.R.D.?

## ANALYSIS

■■■ An appellate court reviews a termination of parental rights to determine "whether the district court's findings address the statutory criteria and whether those findings are supported by substantial evidence and are not clearly erroneous." *In re Welfare of P.R.L.*, 622 N.W.2d 538, 543 (Minn.2001) (citation omitted). We examine the record "to determine whether the evidence is clear and convincing." *Id.* (citing *In re Welfare of Clausen*, 289 N.W.2d 153, 156 (Minn.1980)). Parental rights may be terminated only for grave and weighty reasons. *In re Welfare of M.D.O.*, 462 N.W.2d 370, 375 (Minn.1990). In a termination-of-parental-rights proceeding, the best interests of the child are paramount. Minn.Stat. § 260C.301, subd. 7 (Supp.2001). If a parent is found to be palpably unfit to be a party to the parent-child relationship, parental rights may be terminated. *Id.*, subd. 1(b)(4) (Supp.2001).

## I.

■■■ Because D.D.'s parental rights to her first two children have been terminat-

ed involuntarily, the legal analysis in this case is different from one involving no prior termination. Typically, the natural parent is presumed to be fit and suitable to be entrusted with the care of his or her child. *In re Welfare of A.D.*, 535 N.W.2d 643, 647 (Minn.1995). The party petitioning to terminate parental rights has the burden of rebutting this presumption. *In re Welfare of Chosa*, 290 N.W.2d 766, 769 (Minn.1980); *see also In re Klugman*, 256 Minn. 113, 118, 97 N.W.2d 425, 428–29 (1959) (stating that "the presumption is that the parent is a fit and suitable person to be entrusted with the care of his child, and the burden is upon him who asserts the contrary to prove it by satisfactory evidence."). Each child in need of protection or services (CHIPS) intervention requires a case plan that reflects the reasonable efforts of a social services agency to facilitate reunification of the parent and child. Minn.Stat. § 260.012 (Supp.2001) (outlining reasonable efforts for rehabilitation and reunification); Minn.Stat. § 260C.201, subd. 6 (Supp.2001) (requiring case plans with CHIPS dispositions). If implementation of the case plan is not successful, a party may petition for termination of parental rights. *See* Minn.Stat. § 260C.301 (Supp.2001) (outlining termination of parental rights). The party petitioning to terminate parental rights must prove one or more of the statutory grounds by clear and convincing evidence. *In re Welfare of J.S.*, 470 N.W.2d 697, 701 (Minn.App.1991), *review denied* (Minn. July 24, 1991); Minn.Stat. § 260C.317, subd. 1 (2000).

■ But upon a district court's determination that a person's parental rights to another child previously have been terminated involuntarily, reasonable efforts for rehabilitation and reunification are not required. Minn.Stat. § 260.012(a)(1)(ii). Further,

[i]t is *presumed* that a parent is palpably unfit to be a party to the parent and child relationship upon a showing that the parent's parental rights to one or more other children were involuntarily terminated * * *.

Minn.Stat. § 260C.301, subd. 1(b)(4) (emphasis added). Under these circumstances, the parent has the burden of rebutting the presumption of palpable unfitness. Thus, having had her parental rights to her first two children terminated, D.D. is statutorily presumed to be palpably unfit to parent D.L.R.D., and, therefore, bears the burden of rebutting that presumption. Minn.Stat. § 260C.301, subd. 1(b)(4).

■ D.D. argues that she is not palpably unfit because, aside from the prior terminations, no other independent factors justify the termination of her parental rights to D.L.R.D. Because of the presumption of D.D.'s unfitness, however, the district court need not establish independent reasons for termination. Rather, it is D.D.'s burden to establish the existence of conditions that show her fitness to parent D.L.R.D. The mere absence of other reasons to terminate parental rights is not sufficient to overcome the presumption of unfitness resulting from a prior involuntary termination of parental rights.

D.D. also argues that she rebutted the statutory presumption of unfitness when she showed "the ability to engage in services" offered by ICHHS. D.D. asserts that she (1) "indicated her willingness to attend therapy or do whatever child protection set up for her to do," (2) attended all but two supervised visitation sessions, (3) attended parenting classes, (4) had a psychological examination, and (5) met with a physician who treated her depression with medication.

But the evidence demonstrates that she has not rebutted the presumption. Unre-

butted evidence establishes that, although ICHHS offered services to D.D. while she was caring for her third child, after becoming pregnant with D.L.R.D., and again after giving birth, D.D. refused services each time. She also falsely alleged that a social worker unlawfully entered her home. These facts do not demonstrate an ability to engage in the services offered by ICHHS. D.D.'s sporadic attendance at parenting classes is insufficient to demonstrate that she has succeeded in improving her parenting skills. Moreover, D.D.'s claim that she no longer used street drugs was proven false when she tested positive for marijuana on the last day of trial. After reviewing the evidence presented to rebut the presumption of D.D.'s unfitness, we conclude that the district court's findings are supported by substantial evidence and are not clearly erroneous.

D.D. impliedly argues that caselaw conflicts with the statutory presumption because courts should

> rel[y] not primarily on past history, but to a great extent upon the projected permanency of the parent's inability to care for his or her child.

*A.D.*, 535 N.W.2d at 649 (citation and quotation omitted). D.D.'s reliance on *A.D.* is misplaced, because *A.D.* did not involve a parent whose parental rights to another child had been terminated. The "past history" in *A.D.* was the parent's sporadic visitation of the child, not a prior adjudication that the parent was unfit to be a party to the parent-child relationship. *Id.* While the presumption based on past unfitness is retrospective, it is also rebuttable with evidence establishing that the prior condition of unfitness no longer exists.

When the presumption of unfitness applies, a parent must affirmatively and actively demonstrate her or his ability to successfully parent a child. We recognize this is a particularly onerous task when,

because of the prior termination of parental rights, the statute has relieved the county of the obligation to develop a case plan and make reasonable efforts to reunite the parent and child. To shoulder this burden, the parent, with the assistance of counsel, is inevitably required to marshal any available community resources to develop a plan and accomplish results that demonstrate the parent's fitness. When it concluded that D.D. failed to rebut the presumption that she is palpably unfit to parent D.L.R.D., the district court did not err.

## II.

D.D. next argues that her parental rights should not have been terminated because ICHHS did not develop a case plan and it failed to make reasonable efforts to reunite her and D.L.R.D. D.D.'s argument ignores the relevant provisions of the parental-termination statutes. As addressed above, the termination statutes clearly provide that when a parent has had parental rights to one or more children involuntarily terminated, the agency is not required to make reasonable efforts to develop a case plan and reunite the parent and child. Minn.Stat. § 260.012(a)(1)(ii). Based on the clear statutory mandate, we conclude that the district court correctly applied the statute when it granted ICHHS's motion to be relieved of its duty to make reasonable efforts to reunite D.D. and D.L.R.D.

## III.

D.D. finally argues that termination is not in the best interests of D.L.R.D. because D.D.'s passivity in interacting with ICHHS is not adequate to support such a finding. The district court made extensive findings supported by substantial evidence regarding D.D.'s conduct and concluded that termination was in the best interests of D.L.R.D. D.D.'s continuing problems with improving her parenting

skills, her mental health and drug abuse, and her other substantial personal issues show that it is not in D.L.R.D.'s best interests to remain with D.D. The district court's detailed and thorough findings, which are supported by substantial evidence, are not clearly erroneous. *See P.R.L.*, 622 N.W.2d at 543. We, therefore, conclude that the district court did not err in finding termination of D.D.'s parental rights to be in the best interests of D.L.R.D.

## DECISION

Because we conclude that D.D. failed to rebut the presumption of unfitness, be-cause the district court's findings are supported by substantial evidence, and because the record establishes that termination of D.D.'s parental rights is in D.L.R.D.'s best interests, we affirm.

**Affirmed.**