In the Matter of the WELFARE
OF the CHILD OF T.C.M.
and G.G., Parents.

No. A08–0928.

Court of Appeals of Minnesota.

Dec. 9, 2008.

Stephanie L. Beckman, Meeker County Attorney, Elizabeth W. Cummins, Assistant County Attorney, Litchfield, MN, for respondent-Meeker County Social Services.

Bradley Kluver, Schaps & Kluver, P.A., Litchfield, MN, for appellant.

Arlene Sullivan, Paynesville, MN, pro se guardian ad litem.

Considered and decided by CONNOLLY, Presiding Judge; BJORKMAN, Judge; and CRIPPEN, Judge.*

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. This delegation was pursuant to Minn.Stat. § 524.5–211.

## OPINION

CONNOLLY, Judge.

Appellant-mother challenges the termination of her parental rights to her minor child arguing that (1) the allegations contained in the petition were not proven by clear and convincing evidence, (2) the district court erred in determining that she failed to rebut the presumption that she is palpably unfit to parent the minor child, and (3) she retained no parental rights which could be terminated by the district court because she executed a delegation of parental authority pursuant to Minn.Stat. § 524.5–211 prior to the filing of the petition. We affirm.

## FACTS

Appellant-mother T.C.M, gave birth to the minor child, N.J.M., on September 15, 2007. At the time she gave birth, appellant was serving a jail sentence for a conviction of felony first-degree driving while intoxicated. On September 17, 2007, appellant executed a delegation of parental authority,[1] designating Randall and Valerie Chellin as the custodians for N.J.M.[2] A petition for termination of parental rights (TPR) was filed by Meeker County authorities on September 28, 2007, and N.J.M. was removed from the Chellins' home and placed in foster care.

Appellant is the mother of five other children. Appellant's parental rights to four of these children have been terminated through prior TPR proceedings in 2000 and 2006. Legal custody of the fifth child was involuntarily transferred from appellant to the child's father in 2000. Meeker County authorities initiated the present action upon learning of these prior cases.

2. Appellant had previously executed a similar delegation of parental authority in favor of the Chellins on August 8, 2007.

Appellant has a lengthy history of chemical abuse, involving intermittent periods of sobriety followed by relapses, starting around age 18. Appellant was 41–years old at the time of trial. She has participated in nine separate drug or alcohol treatment programs. The district court noted that appellant has a "cyclical pattern of alcohol and drug abuse, treatment and sobriety, followed by relapse." Following her most recent conviction for first-degree driving while intoxicated, and as a condition of her probation, appellant entered and completed a residential treatment program and a halfway-house placement, and has attended a relapse prevention program and obtained a female A.A./N.A. sponsor.

A three-day trial was held on the TPR petition. The district court concluded that appellant was presumed to be palpably unfit to be a party to a parent-child relationship because of the prior involuntary terminations of her parental rights and that appellant had failed to rebut this presumption. It therefore terminated appellant's parental rights to N.J.M. This appeal follows.

## ISSUES

I. Did the district court err in determining that the allegations contained in the petition for termination of parental rights were proven by clear and convincing evidence?

II. Did the district court err in determining that appellant failed to rebut the presumption that she was palpably unfit to parent the child?

III. Did appellant retain any parental rights which could be terminated by the state after appellant executed two valid delegations of parental authority pursuant to Minnesota law?

## ANALYSIS

■ On appeal from a termination of parental rights, the reviewing court closely inquires into the sufficiency of the evidence to determine whether the evidence is clear and convincing. *In re Welfare of J.M.*, 574 N.W.2d 717, 724 (Minn.1998); *In re Welfare of S.Z.*, 547 N.W.2d 886, 893 (Minn.1996). An appellate court "exercises great caution in termination proceedings, finding such action proper only when the evidence clearly mandates such a result." *Id.*

[Appellate courts] review the termination of parental rights to determine whether the district court's findings address the statutory criteria and whether the district court's findings are supported by substantial evidence and are not clearly erroneous. We give considerable deference to the district court's decision to terminate parental rights. But we closely inquire into the sufficiency of the evidence to determine whether it was clear and convincing. We affirm the district court's termination of parental rights when at least one statutory ground for termination is supported by clear and convincing evidence and termination is in the best interests of the child, provided that the county has made reasonable efforts to reunite the family.

*In re Welfare of Children of S.E.P.*, 744 N.W.2d 381, 385 (Minn.2008) (citations omitted); *see also In re Welfare of Child of W.L.P.*, 678 N.W.2d 703, 709 (Minn.App. 2004) (same). On review, "[c]onsiderable deference is due to the district court's decision because a district court is in a superior position to assess the credibility of witnesses." *In re Welfare of L.A.F.*, 554 N.W.2d 393, 396 (Minn.1996).

■ "[O]n appeal in a termination of parental rights case, while we carefully review the record, we will not overturn the trial court's findings of fact unless those findings are clearly erroneous." *In re*

*Welfare of A.D.*, 535 N.W.2d 643, 648 (Minn.1995).

## I.

Appellant argues that the state failed to demonstrate, by clear and convincing evidence, that she is palpably unfit to be a party to a parent-child relationship. In the petition, the state relied on Minn.Stat. § 260C.301, subd. 1(b)(4) (2006), in alleging that appellant's parental rights should be terminated because she was presumed to be palpably unfit to be a party to the parent-child relationship since it could be shown that appellant had her parental rights to one or more children involuntarily terminated.

■ Minnesota Statutes section 260.301, subdivision 1 provides, in relevant part:

The juvenile court may upon petition, terminate all rights of a parent to a child:

. . . .

(b) if it finds that one or more of the following conditions exist:

. . . .

(4) that a parent is palpably unfit to be a party to the parent and child relationship because of a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental, or emotional needs of the child. It is presumed that a parent is palpably unfit to be a party to the parent and child relationship upon a showing that the parent's parental rights to one or more other children were involuntarily terminated or that the parent's custodial rights to another child have been invol-untarily transferred to a relative under section 260C.201, subdivision 11, paragraph (e), clause (1), or a similar law of another jurisdiction.

Once it has been shown that the parental rights to one or more children have been involuntarily terminated, Minnesota law presumes the parent to be palpably unfit to be a party to a parent-child relationship. *Id.* The burden then shifts to the parent to "affirmatively and actively demonstrate her or his ability to successfully parent a child." *In re Welfare of D.L.R.D.*, 656 N.W.2d 247, 251 (Minn.App.2003).

The district court found that legal and physical custody of one of appellant's minor children had been involuntarily transferred to the child's father by the Hennepin County District Court in 2000. The district court also found that appellant's parental rights to three of her minor children were terminated by the Hennepin County District Court in 2000, and that appellant's parental rights to another minor child were terminated by the Wadena County District Court in 2007. Appellant concedes these facts, and therefore, concedes this portion of the petition. The district court's findings relating to the prior terminations of parental rights and the involuntary transfer of custody are not clearly erroneous, and the burden, therefore, shifts to appellant to "affirmatively and actively demonstrate her or his ability to successfully parent a child." *Id.*

## II.

■ Appellant argues that the district court erred when it determined that she failed to rebut the presumption that she is palpably unfit to be a party to a parent-child relationship because of the prior terminations of her parental rights to her minor children. Appellant argues that the record is "replete with evidence that [she] has made significant and substantial

changes" since her DWI arrest, highlighting her (1) compliance with prenatal instructions during her pregnancy, (2) completion of her executed jail sentence, (3) successful completion of a halfway-house program, (4) gaining full-time employment, (5) attendance at relapse prevention, and (6) addition of a sponsor and a spiritual component to her efforts at sobriety. Appellant also discusses the testimony of several witnesses who testified that they believed that appellant was very serious about her recovery and committed to sobriety.

On review, "[c]onsiderable deference is due to the district court's decision because a district court is in a superior position to assess the credibility of witnesses." *L.A.F.*, 554 N.W.2d at 396. "[O]n appeal in a termination of parental rights case, while we carefully review the record, we will not overturn the trial court's findings of fact unless those findings are clearly erroneous." *A.D.*, 535 N.W.2d at 648.

The district court noted appellant's newfound faith and the support appellant had from the members of her faith community. The district court also noted that appellant had participated in nine alcohol- or drug-treatment programs, including Share House Halfway House, as appellant highlights in her argument. In addition, the district court noted that appellant (1) had gained full-time employment, (2) continued to attend a relapse prevention program as recommended by her court-ordered chemical dependency evaluation,[3] and (3) had obtained a sponsor. The district court also discussed the written reports and testimony of the various expert witnesses, including those relied upon in appellant's argument. In short, the district court specifically recognized those

facts argued by appellant, but drew different conclusions from those facts than appellant. We will not disturb the district court's findings unless they are clearly erroneous. *A.D.* 535 N.W.2d at 648. Moreover, the district court considered other evidence in reaching its conclusion.

The district court found that "[n]one of the four (4) expert witnesses who testified was of the opinion that [appellant] was now, or in the reasonably foreseeable future, in a position to assume the parental responsibilities for N.J.M.," despite appellant's recent efforts. We note, in particular, the testimony of Dr. Joyce Johnson and Edmund Cowley.

Dr. Johnson is a licensed psychologist who completed a parental capacity assessment of appellant. The district court stated that Dr. Johnson "believed that without constant structure or supervision, [appellant] would likely return to the cycle of treatment, sobriety, relapse and return to a pattern of alcohol and drug abuse." This statement is supported by Dr. Johnson's testimony. Dr. Johnson testified, and the district court stated in its order, that while appellant has a sober support system in place, her participation in that support system was voluntary and if she stopped participating in the support system, she could relapse into drug or alcohol use, as she had done nine times in the past. The district court found that historically, when appellant has used drugs or alcohol, she has neglected her children and placed her children in great danger. Appellant does not raise any argument with regard to Dr. Johnson's testimony. The district court's characterization of Dr. Johnson's testimony, and the conclusions it draws from that testimony, are not clearly erroneous

---

**3.** As a condition of probation for her January 2007 DWI offense, appellant was ordered to complete residential chemical-dependency treatment and to follow any recommendations after treatment.

Cowley is a Chemical Use Assessor employed by Meeker County. The district court's ordered stated that Cowley "was of the opinion that with the history of chemical abuse of [appellant], that she would need to maintain at least three (3) years sobriety, in an unsupervised setting, before her alcohol and drug dependency could be deemed to be 'cured.'" Cowley also testified that appellant's time of sobriety in a structured environment would not "really constitute a sober period of time, because you are required not to use while you're in there ... and that's not enough being able to show that you can stay clean and sober on your own in the community." The district court found that appellant's one year of sobriety at the time of trial had been in a structured setting, as appellant was incarcerated for nine months, followed by inpatient treatment at a halfway house, and residence in an alcohol- and drug-free setting with the Chellins. The district court also noted that appellant is on probation and that failure to follow conditions of her probation could have resulted in appellant serving an executed prison sentence. The district court cited *W.L.P.*, 678 N.W.2d at 713, as an analogous case where a parent in a TPR proceeding argued that programs completed as a condition of probation rebutted the presumption that the parent was palpably unfit to be a parent. This court rejected that argument because the father did not present any evidence that he would have independently chosen to complete those programs had he not been compelled by threat of prison. *Id.* The district court's findings regarding Cowley's testimony are not clearly erroneous.

We agree with the district court's statement that timeliness is of the utmost importance in termination of parental rights cases, because, "[e]ach delay in the termination of a parent's rights equates to a delay in a child's opportunity to have a permanent home." *In re Welfare of J.R.*, 655 N.W.2d 1, 5 (Minn.2003). Citing Minn. Stat. § 260C.301, subd. 7 (2006), the district court stated that "[w]hen the best interests of the child conflict with the interests of the parent, the best interests of the child must prevail." In short, the district court specifically recognized those facts outlined by appellant, but drew different conclusions from them than appellant. "That the record might support findings other than those made by the trial court does not show that the court's findings are defective." *Vangsness v. Vangsness*, 607 N.W.2d 468, 474 (Minn.App. 2000).

We note, as did the district court, that appellant has shown substantial progress toward sobriety. While her efforts are commendable, our review is limited to a review of the district court's findings to ensure they are not clearly erroneous. *See A.D.* 535 N.W.2d at 648. The district court's findings address the statutory criteria and are supported by substantial evidence and are not clearly erroneous. *See S.E.P.*, 744 N.W.2d at 385. The district court did not err in concluding that appellant failed to rebut the presumption that she is palpably unfit, or in terminating appellant's parental rights.

### III.

Appellant argues that she had no parental rights for the district court to terminate when the petition was filed because she had executed a valid delegation of parental authority, pursuant to Minn.Stat. § 524.5–211, delegating parental authority to the Chellins. There is no dispute that appellant properly executed two separate delegations of parental authority.

Minnesota Statutes, section 524.5–211, reads:

(a) A parent, legal custodian, or guardian of a minor or incapacitated person, by a properly executed power of attorney, may delegate to another person, for a period not exceeding one year, any powers regarding care, custody, or property of the minor or ward, except the power to consent to marriage or adoption of a minor ward.

(b) A parent who executes a delegation of powers under this section must mail or give a copy of the document to any other parent within 30 days of its execution unless:

(1) the other parent does not have parenting time or has supervised parenting time; or

(2) there is an existing order for protection under chapter 518B or a similar law of another state in effect against the other parent to protect the parent, legal custodian, or guardian executing the delegation of powers or the child.

(c) A parent, legal custodian, or guardian of a minor child may also delegate those powers by designating a standby or temporary custodian under chapter 257B.

The question of whether appellant retained any parental rights which could be terminated through a TPR proceeding after she executed a delegation of parental authority involves the application of a statute to undisputed facts, which is a question of law we review de novo. *See Davies v. W. Publ'g Co.*, 622 N.W.2d 836, 841 (Minn. App.2001) ("Application of a statute to the undisputed facts of a case involves a question of law, and the district court's decision is not binding on this court.") (citing *Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn.1998)), *review denied* (Minn. May 29, 2001).

Appellant's argument that she did not retain any parental rights to terminate after she delegated parental authority to the Chellins is without merit. The language of the statute explicitly reserves parental rights to the natural parent of a minor child, specifically, "the power to consent to marriage or adoption of a minor ward." Minn.Stat. § 524.5–211(a). Moreover, by the statute's own terms, the delegation is merely the execution of a power of attorney "for a period not exceeding one year," *id.*, rather than a divestment of the natural parent's rights.

The statute provides that a similar delegation may be accomplished under the provisions of chapter 257B of the Minnesota Statutes. Under that parallel provision, "[t]he commencement of a co-custodian's or custodian's authority under this chapter does not, by itself, divest a parent or legal custodian of any parental or custodial rights." Minn.Stat. § 257B.06, subd. 5 (2006). For appellant's argument to have merit, it must be established that Minn. Stat. § 524.5–211 serves as a de facto voluntary divestment of parental rights from the natural parent to the delegated custodian. There is no basis for such a reading in the plain language of the statute, and the statutory provision cited as similar authority clearly evidences a contrary interpretation.

Moreover, there is no support in law for an argument that the execution of a power of attorney in general functions to divest the principal of its interest in the thing which is the subject of the power. The statute allows for delegation of parental authority through the execution of a valid power of attorney. Powers of attorney are, by their nature, revocable instruments. *See* Minn.Stat. § 523.11 (2006); *see also* Minn.Stat. § 257B.07 (2006). Moreover, "[an] attorney-in-fact has no affirmative duty to exercise any power conferred upon the attorney-in-fact by the power of attorney." Minn.Stat. § 523.21

(2006). The Chellins, as the delegated guardians of the minor child, are under no affirmative duty to exercise the authority conferred upon them by the delegation of parental authority. They have the ability to exercise parental authority, with no clear mandate to do so.

The delegation of parental authority is a temporary, revocable grant of a limited power of attorney that does not divest appellant of her parental rights. As such, it does not obviate a county's duty to initiate a TPR proceeding.[4]

## DECISION

Because (1) the grounds for termination as stated in the petition were proven by clear and convincing evidence, (2) the district court properly determined that appellant failed to rebut the presumption that she was palpably unfit to parent the minor child, and (3) the TPR petition was properly brought because appellant retained her parental rights to the minor child after the execution of the delegation of parental authority, the district court properly terminated appellant's rights to the minor child.

**Affirmed.**

---

4. Pursuant to Minn.Stat. § 260C.301, subd. 3(a) (2006), "[t]he county attorney shall file a termination of parental rights petition within 30 days of the responsible social services agency determining that ... the parent has lost parental rights to another child through an order involuntarily terminating the parent's rights, or another child of the parent is the subject of an order involuntarily transferring permanent legal and physical custody of the child to a relative under section 260C.201, subdivision 11, paragraph (e), clause (1)."