*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0430, A14-0437**

In the Matter of the Welfare of the Children of:
J. A. S. and R. L. S., Parents.

**Filed August 25, 2014
Affirmed
Kirk, Judge**

Anoka County District Court
File No. 02-JV-13-1441

Gretchen R. Severin, Munstenteiger & Severin, P.A., Anoka, Minnesota (for appellant J.A.S.)

Patricia A. Zenner, Stillwater, Minnesota (for appellant R.L.S.)

Anthony C. Palumbo, Anoka County Attorney, M. Katherine Doty, Assistant County Attorney, Anoka, Minnesota (for respondent Anoka County)

Considered and decided by Hudson, Presiding Judge; Stauber, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

In these consolidated appeals from the district court's termination of appellant-parents' parental rights, appellants argue that the district court abused its discretion by terminating their parental rights because it determined that: (1) they were palpably unfit

to be parties to the parent and child relationship; (2) they committed egregious harm; and (3) termination of parental rights is in the children's best interests. We affirm.

## FACTS

Appellants J.A.S. (mother) and R.L.S. (father) married on October 17, 2009. They are the parents of K.A.S., who was born in March 2010, and L.M.S., who was born in March 2011. Before K.A.S. and L.M.S. were born, the Hennepin County District Court involuntarily terminated mother's parental rights to a third child, J.A.C., and mother agreed to voluntarily terminate her parental rights to a fourth child, A.R.C. Father served 25 years in prison for sexually abusing his teenage stepdaughter from a previous marriage.

On October 17, 2013, Mark Hudson, M.D., a child-abuse pediatrician at the Midwest Children's Resource Center (MCRC), reported to the Anoka County Sheriff's Department that K.A.S. had gonorrhea and had possibly been sexually abused. K.A.S. and her parents were still at the hospital, and Dr. Hudson requested that police and child-protection social workers meet with the family. Anoka County Sheriff's Department Detective Patrick Nelson went to MCRC, located K.A.S. and L.M.S., and placed them in protective custody.

Detective Nelson then interviewed mother and father separately. Mother told Detective Nelson that she and father engaged in three-way sexual encounters. Mother stated that before the children were born she and father typically engaged in those encounters twice a month, and after the children were born they engaged in the

2

encounters "once in a blue moon." She stated that she had maintained a profile on an adult-oriented website to seek individuals for these sexual encounters.

Mother stated that she took K.A.S. to her family physician after she noticed that K.A.S. had vaginal discharge, and her physician referred K.A.S. to MCRC. Mother reported that she also had vaginal discharge, and she thought she had been diagnosed with chlamydia. Mother reported that B.W., with whom she and father had a three-way sexual encounter in September 2013, had recently informed them that he had gonorrhea and suggested that they be tested.

Mother told Detective Nelson that K.A.S. and L.M.S. stayed at a babysitter's house when she and father had three-way sexual encounters, and that during the encounter with B.W., they were with a babysitter. Mother stated that one of the children's babysitters is named Tina, but she did not know Tina's last name. Mother explained that Tina is the girlfriend of her ex-boyfriend, and the ex-boyfriend is a sex offender. Mother acknowledged that she was aware that father is a sex offender. When Detective Nelson questioned her about the details of father's conviction, mother became upset and ended the interview.

Father admitted to Detective Nelson that he served 25 years in prison after he was convicted of having sex with his 13- or 14-year-old stepdaughter. Father acknowledged that he and mother engaged in three-way sexual encounters, but stated that he mainly did so because it made mother happy. Father told Detective Nelson that they found third parties on the Internet, and the encounters occurred approximately once a month. Detective Nelson asked him roughly how many people they had encounters with in 2013,

and father said 20. Father stated that most of the encounters occurred at their house while K.A.S. and L.M.S. were asleep in bed.

Father also told Detective Nelson about the sexual encounter with B.W. Father stated that when he walked past K.A.S. and L.M.S.'s bedroom with B.W., B.W. asked about the children. Father reported that B.W. contacted them after the encounter and told them he had tested positive for chlamydia. Father stated that both he and mother tested positive for gonorrhea.

On October 22, respondent Anoka County filed a petition to terminate mother's and father's parental rights. The district court held a termination of parental rights (TPR) trial in January 2014. Father testified that he and mother have changed their lifestyle. They removed all of the pornography from their home and no longer have sexual encounters with other people. Father testified that it never occurred to him that exposing K.A.S. and L.M.S. to his and mother's sexual behavior could be dangerous. Father also testified that he was arrested in 2011 for sexual contact with a 16-year-old female acquaintance and later pleaded guilty to stalking.

Mother testified that she did not believe her lifestyle harmed her children's health and welfare, and that the third parties were not strangers because she talked to them on the phone before they came to their home. Mother testified that she did not know how K.A.S. contracted gonorrhea.

Dr. Hudson testified that K.A.S. tested positive for gonorrhea in her throat and her genitals. He explained that gonorrhea is contracted when an individual's mucous membranes inside the mouth, genitalia, or urethra come in contact with wet, infected

4

secretions from another individual.  Dr. Hudson testified that "[s]exual abuse is really the only reasonable, potential explanation" for how K.A.S. contracted gonorrhea.  He explained that by "sexual abuse," he meant "that someone's infected genitals, be that a penis or vagina, [was] in contact with her mouth or mucous membranes of her mouth and the mucous membranes of her genitals."  Dr. Hudson testified that gonorrhea is an infection that would probably clear by itself, but sexual abuse has enormous long-term health consequences, including "increased rates of depression; suicidality; early chemical use; chemical dependency; early sexual debut, meaning the first time you have sex; earlier pregnancy; [and] more sexually transmitted infections."

The child-protection social worker and the guardian ad litem testified that it is in the children's best interests to terminate mother's and father's parental rights.  At the time of trial, the Anoka County Attorney's Office had not charged father with sexually abusing K.A.S., but Detective Nelson testified that he is a suspect in the ongoing investigation.

After the trial, the district court filed an order terminating mother's and father's parental rights to K.A.S. and L.M.S.  Mother and father appealed separately, and this court consolidated their appeals.

**D E C I S I O N**

Appellate courts review a district court's decision to terminate parental rights to determine whether the district court's findings address the statutory criteria and are not clearly erroneous.  *In re Welfare of Children of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008).  In doing so, "[w]e give considerable deference to the district court's decision to

terminate parental rights. But we closely inquire into the sufficiency of the evidence to determine whether it was clear and convincing." *Id.* (citation omitted). Appellate courts review the district court's determination that a statutory basis for terminating a parent's parental rights is present for an abuse of discretion. *In re Welfare of Children of J.R.B.*, 805 N.W.2d 895, 901 (Minn. App. 2011), *review denied* (Minn. Jan. 6, 2012). We will affirm the district court's decision to terminate parental rights if at least one statutory ground alleged in the petition is supported by clear and convincing evidence and termination of parental rights is in the child's best interests. *In re Welfare of Children of R.W.*, 678 N.W.2d 49, 55 (Minn. 2004).

## I. The district court did not abuse its discretion by terminating mother's and father's parental rights based on palpable unfitness.

The district court concluded that mother and father are both palpably unfit to parent K.A.S. and L.M.S. A district court may terminate a parent's parental rights when it finds that the parent

> is palpably unfit to be a party to the parent and child relationship because of a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental, or emotional needs of the child.

Minn. Stat. § 260C.301, subd. 1(b)(4) (2012).

### A. Mother.

Mother argues that she successfully rebutted the statutory presumption of palpable unfitness because she demonstrated that she completed chemical-dependency treatment,

6

is participating in mental-health services, and her interactions with her children during visits were appropriate. A party is presumed to be palpably unfit to be a party to the parent and child relationship if the party's parental rights to one or more children were involuntarily terminated. *Id.* If the presumption of palpable unfitness applies, it is the parent's burden to rebut it. *In re Welfare of Child of J.L.L.*, 801 N.W.2d 405, 412 (Minn. App. 2011), *review denied* (Minn. July 28, 2011). To successfully rebut the presumption, "a parent must do more than engage in services; a parent must demonstrate that his or her parenting abilities have improved." *In re Welfare of the Child of D.L.D.*, 771 N.W.2d 538, 545 (Minn. App. 2009). "When the presumption of unfitness applies, a parent must affirmatively and actively demonstrate her or his ability to successfully parent a child." *In re Welfare of D.L.R.D.*, 656 N.W.2d 247, 251 (Minn. App. 2003).

The district court correctly found that the presumption of palpable unfitness applies to mother because her parental rights to J.A.C. were involuntarily terminated. The district court made numerous findings about mother's mental-health diagnoses and the mental-health treatment that mother has received since October 2012. The district court noted that in 2008, the court that terminated mother's parental rights to J.A.C. found that mother was in denial and lacked insight into the risks her chemical abuse created for J.A.C. The district court found that mother is still in denial, does not take responsibility for her actions, and has no insight into the risks her sexual behavior creates for K.A.S. and L.M.S. The district court also found that mother continues to use marijuana and alcohol. Based on those findings, the district court determined that mother did not rebut the presumption of palpable unfitness.

The district court's findings are supported by substantial evidence. The evidence presented at trial establishes that, while mother sought out mental-health services, she has numerous significant mental-health issues that remain unresolved. A psychologist who evaluated mother in August 2013 recommended that she undergo a psychiatric evaluation to determine if she should be prescribed medication; participate in individual or group psychotherapy; continue to participate in rehabilitative services; and continue to participate in chemical-dependency services. Mother testified that she met with a therapist for approximately six months before the August 2013 evaluation, but was no longer meeting with that therapist at the time of the trial and was not taking medication. She also testified that she never discussed her three-way sexual encounters with her therapist and acknowledged that she has ongoing mental-health issues. There is also evidence in the record that mother frequently uses marijuana and alcohol.

Further, mother testified that she does not believe that her three-way sexual encounters negatively impacted K.A.S. and L.M.S.'s health and welfare, and that if the county had not become involved she and father would have continued those encounters. Mother testified that she had no concerns about father's status as a convicted sex offender, and the child-protection social worker testified that mother has consistently refused to consider that father may have been responsible for giving K.A.S. gonorrhea.

**B.     Father.**

Father argues that there is insufficient evidence to support the district court's determination that he is palpably unfit. The district court determined that the county presented clear and convincing evidence to rebut any presumption of parental fitness as

8

to father. That determination is supported by substantial evidence and is not clearly erroneous. Father testified that he served 25 years in prison for sexually abusing his teenage stepdaughter and pleaded guilty to stalking a 16-year-old girl. In addition, evidence in the record shows that the county requested that father complete a psychosexual evaluation and although he initially agreed to do so, he later refused to participate.

Father further testified that it did not occur to him that exposing K.A.S. and L.M.S. to three-way sexual encounters could be harmful to them, and he and mother would have continued those encounters if K.A.S. had not contracted gonorrhea. Father admitted that he had been diagnosed with gonorrhea and testified that the children regularly came into his bed at night.

The child-protection social worker testified that father suggested that K.A.S. contracted gonorrhea by putting household objects in her mouth. She also testified that she had concerns about father's behavior during his supervised visits with K.A.S. and L.M.S. The children did not run and greet mother and father and did not have trouble saying goodbye to them. Father did not engage very much with the children and asked them inappropriate questions.

## II. The district court did not abuse its discretion by terminating mother's and father's parental rights based on egregious harm.

The district court determined that mother and father committed egregious harm against K.A.S. and L.M.S. A district court may terminate parental rights when it determines

9

> that a child has experienced egregious harm in the parent's care which is of a nature, duration, or chronicity that indicates a lack of regard for the child's well-being, such that a reasonable person would believe it contrary to the best interest of the child or of any child to be in the parent's care.

Minn. Stat. § 260C.301, subd. 1(b)(6) (2012).

"Egregious harm" is defined as "the infliction of bodily harm to a child or neglect of a child which demonstrates a grossly inadequate ability to provide minimally adequate parental care." Minn. Stat. § 260C.007, subd. 14 (2012). Egregious harm includes "conduct toward a child that constitutes criminal sexual conduct." *Id.*, subd. 14(10). The supreme court has held that "'in the parent's care' should not be limited to the physical presence of a parent at the time egregious harm occurs." *In re Welfare of T.P.*, 747 N.W.2d 356, 361 (Minn. 2008). To terminate the parental rights of a parent who did not personally inflict harm on a child, the district court "must find that the parent either knew or should have known that the child had experienced egregious harm." *Id.* at 362.

Mother argues that the fact that K.A.S. contracted gonorrhea does not constitute egregious harm on its own, and there is no evidence that she knew or should have known that K.A.S. experienced egregious harm. Father contends that the district court's order should be reversed because the district court did not specifically find that he committed conduct that constitutes criminal sexual conduct.

The district court made numerous findings about mother's and father's sexual activities in the family home and the encounter with B.W. that led to their diagnosis of gonorrhea. The district court found that "[s]exual abuse is the only reasonable potential explanation for a child [K.A.S.'s] age being infected with gonorrhea." It also found that

10

mother is unwilling to consider the possibility that K.A.S. was abused by father, offers no other explanation for how K.A.S. contracted gonorrhea, "takes no responsibility for her actions," and "has no insight into the risks to her children from her sexual lifestyle choices." The district court found that Detective Nelson, the child-protection social worker, and the guardian ad litem all "ultimately believed[] that [K.A.S.] contracted the disease from [father]." Further, the district court found that the children had been cared for by the girlfriend of mother's sex-offender ex-boyfriend.

The district court's findings are supported by substantial evidence and are not clearly erroneous. It is undisputed that K.A.S. contracted gonorrhea, and mother and father admitted that they invited people they met over the Internet into their home for three-way sexual activity. Father admitted that he is a sex offender, and mother admitted that the girlfriend of her sex-offender ex-boyfriend sometimes babysat K.A.S. and L.M.S. Dr. Hudson testified extensively about how gonorrhea is contracted, and provided his expert opinion that "[s]exual abuse is really the only reasonable, potential explanation" for how K.A.S. contracted gonorrhea. Detective Nelson testified that father is still a suspect in the investigation into who gave K.A.S. gonorrhea, and the child-protection social worker and the guardian ad litem testified that they believe father gave K.A.S. gonorrhea. Although the district court did not specifically find that mother knew or should have known that the children suffered egregious harm, that finding is implicit in its extensive findings about mother's refusal to consider that father sexually abused K.A.S. and her failure to recognize that her sexual behavior endangered the children.

11

Further, even if father did not sexually abuse K.A.S., the abuse happened while she was in mother's and father's care.

**III.    The district court did not abuse its discretion by determining that termination of parental rights is in the children's best interests.**

In a TPR proceeding, "the best interests of the child must be the paramount consideration." Minn. Stat. § 260C.301, subd. 7 (2012). The district court must consider the best interests of the child and explain its rationale in its order terminating parental rights. *In re Tanghe*, 672 N.W.2d 623, 626 (Minn. App. 2003). The district court "must balance the child's interests in preserving the parent and child relationship, the parent's interest in preserving the parent and child relationship, and any competing interests of the child." *J.L.L.*, 801 N.W.2d at 414. "Competing interests include such things as a stable environment, health considerations and the child's preferences." *In re Welfare of R.T.B.*, 492 N.W.2d 1, 4 (Minn. App. 1992). "We review a district court's ultimate determination that termination is in a child's best interest for an abuse of discretion." *J.R.B.*, 805 N.W.2d at 905.

Mother and father argue that the district court failed to make specific findings as to the best interests of the children and explain the rationale for its determination. We disagree. The district court found that there was clear and convincing evidence that termination of mother's and father's parental rights is in K.A.S.'s and L.M.S.'s best interests. The district court considered the children's interests and the parents' interests, and concluded that "[t]he children's need for stability, safety and permanency, with nurturing, competent caregivers, outweigh[s] any competing interests of the parents."

12

The district court made extensive findings about father's sex-offender status, mother's and father's choices to engage in three-way sexual behavior in their home with individuals they met over the Internet, K.A.S.'s gonorrhea diagnosis, and mother's and father's opinions that the children were not harmed by their sexual behavior. These findings are supported by the record and are not clearly erroneous. Therefore, the district court did not abuse its discretion by determining that termination of mother's and father's parental rights is in the best interests of K.A.S. and L.M.S.

**Affirmed.**