*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0526**

In the Matter of the Welfare of the Child of:
C. K. W. and G. B. W., Parents

**Filed October 17, 2016
Affirmed
Smith, Tracy M., Judge**

Rice County District Court
File No. 66-JV-14-2540

Stephen R. Ecker, Faribault, Minnesota (for appellant C.K.W.)

James R. Martin, Martin Law Office, Faribault, Minnesota (for respondent G.B.W.)

John Fossum, Rice County Attorney, Terence Swihart, Jennifer J. Nelson, Assistant County Attorneys, Faribault, Minnesota (for respondent Rice County)

Michele Holmblad, Faribault, Minnesota (guardian ad litem)

Considered and decided by Smith, Tracy M., Presiding Judge; Ross, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH, TRACY M.**, Judge

Appellant C.K.W. challenges the termination of her parental rights to her child, A.W. C.K.W.'s parental rights were terminated after the district court concluded that she had failed to rebut the presumption that a parent is palpably unfit to be a party to the parent-child relationship arising from a previous termination of that parent's parental rights. On

appeal, C.K.W. argues that she produced sufficient evidence to rebut the presumption of palpable unfitness. She further argues that the district court abused its discretion in concluding that it was in the best interests of the child to terminate her parental rights. Because C.K.W. failed to produce sufficient evidence to rebut the presumption of palpable unfitness and because the district court did not abuse its discretion in concluding that it was in the best interests of the child to terminate C.K.W.'s parental rights, we affirm.

**FACTS**

In a previous case in 2009, the Dakota County District Court concluded that C.K.W. was palpably unfit to parent and involuntarily terminated her parental rights to her two children upon finding that she failed to provide the children stable housing or safe living conditions; suffered from chronic unemployment; struggled with chemical dependency, anger, and mental-health issues; and neglected her children.

Some five years later, in October 2014, C.K.W. gave birth to another child, A.W. Based on the prior termination of parental rights, Rice County Social Services immediately filed a petition for termination of C.K.W.'s parental rights, and A.W. was removed from C.K.W.'s custody and placed in foster care.

The district court held a two-day trial on the county's petition in February 2016. Three witnesses testified: the social worker managing the case and the child's guardian ad litem testified on behalf of the county, and C.K.W. testified on her own behalf. The testimony addressed current circumstances, including those relating to the areas of concern underlying the previous termination of parental rights.

2

*Chemical Dependency*

During the pendency of the petition, C.K.W.'s urinalysis tested positive for marijuana on three occasions, and she refused two additional tests. The county informed C.K.W. that it would deem refused tests as positive results. C.K.W. refused one of these tests because she was on her way to work. The county referred C.K.W. to two separate chemical-dependency assessments in November 2014 and September 2015. The November 2014 assessor recommended that C.K.W. abstain from chemical use and complete a chemical-education class. C.K.W. said she could not attend the class because it was not offered at the time and it cost $250. The September 2015 assessor recommended that C.K.W. stabilize her mental health and remain sober or seek substance-abuse-disorder treatment. The day following the second assessment, C.K.W.'s urinalysis tested positive for marijuana. The county recommended that C.K.W. undergo treatment, but C.K.W. never completed this treatment. At trial, C.K.W. testified that she has stopped smoking cannabis and drinking alcohol because of a heart condition.

*Housing Situation*

At the time of trial, C.K.W. had lived in the same apartment for more than seven months. The social worker conducted home visits at the apartment and found that the oven did not function, there were no screens on the windows, and the home lacked furniture. C.K.W. also lacked a crib for an infant. The apartment also smelled of cat urine. C.K.W. testified that she has since obtained furniture. The morning of trial, however, C.K.W. was evicted from her apartment for failing to pay rent. As a solution to the housing problem,

C.K.W. testified that she could live with a friend in Minneapolis or with A.W.'s paternal grandparents in Mississippi.

*Mental-Health Issues*

Both C.K.W. and the social worker testified that C.K.W. suffers from depression, anxiety, post-traumatic stress disorder, attention-deficit disorder, and mixed personality disorder. The county spoke with C.K.W. about obtaining treatment. The social worker testified that C.K.W. "simply wasn't interested" in therapy because "[s]he doesn't find it helpful." C.K.W. reported that she had begun seeing a therapist approximately one month before the start of trial and had started taking medication for depression and anxiety. She refused to sign a release of information to allow the social worker to speak with her therapist.

*Chronic Unemployment*

At the time of A.W.'s birth, C.K.W. was unemployed. She worked at HyVee during the spring of 2015, but her employment was terminated sometime thereafter. She began working at Goodwill in May 2015, but Goodwill terminated C.K.W.'s employment in September 2015 due to multiple absences from work. C.K.W. stated that she missed work because she suffers from tachycardia, a heart condition resulting in dizziness and a chance of blacking out. C.K.W. testified that she has had several interviews but has not found a job. At the time of trial, C.K.W. had not sought treatment for her tachycardia and had been unemployed since September 2015.

*Parenting Skills*

All three witnesses, including C.K.W., testified that C.K.W. and her belongings smelled of cat urine and that visits with A.W. at the library stopped because of the odor. The social worker and guardian ad litem further testified that C.K.W. "smother[ed]" A.W. with hugs and kisses, despite A.W.'s efforts to pull away. During one visit, the social worker testified, C.K.W. fed A.W. to the point that A.W. vomited. C.K.W. explained that she wanted A.W. to finish eating before taking a nap. To demonstrate her efforts to improve her parenting skills, C.K.W. testified that she watched a video on child CPR at Parenting Options, but admitted that she attended no other parenting programs.

C.K.W. testified that she has "always put [her] kids first." She stated that she has "made a lot of changes" and "cut a lot of people out of [her] life because they were making poor choices." The social worker opined that C.K.W. had not changed since the 2009 proceeding. The guardian ad litem testified similarly.

The district court ordered the termination of C.K.W.'s parental rights. The district court concluded that C.K.W. had failed to rebut the presumption of palpable unfitness and that it was in A.W.'s best interests to terminate C.K.W.'s parental rights.

C.K.W. appeals.

**D E C I S I O N**

Parental rights may be terminated "only for grave and weighty reasons." *In re Child of P.T.*, 657 N.W.2d 577, 591 (Minn. App. 2003), *review denied* (Minn. Apr. 15, 2003). A district court may terminate parental rights where clear and convincing evidence supports at least one statutory ground for termination and termination is in the best interests of the

5

child. *In re Welfare of Children of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008). The decision to terminate parental rights is within the district court's discretion. *In re Welfare of Child of R.D.L.*, 853 N.W.2d 127, 136-37 (Minn. 2014). The court of appeals accords "[c]onsiderable deference" to the district court's findings because the "district court is in a superior position to assess the credibility of witnesses." *In re Welfare of L.A.F.*, 554 N.W.2d 393, 396 (Minn. 1996).

**I.     C.K.W. failed to rebut the presumption that she is palpably unfit to parent.**

A district court may terminate parental rights upon finding that a parent is "palpably unfit" to be a party to the parent-child relationship because

> of a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration and nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental, or emotional needs of the child.

Minn. Stat. § 260C.301, subd. 1(b)(4) (2014). The county bears the burden of proving by clear and convincing evidence that the parent is palpably unfit. *In re Welfare of Child of J.W.*, 807 N.W.2d 441, 445 (Minn. App. 2011), *review denied* (Minn. Jan. 6, 2012).

A parent is presumed palpably unfit if his or her "parental rights to one or more other children were involuntarily terminated." Minn. Stat. § 260C.301, subd. 1(b)(4). A parent may rebut this presumption by producing sufficient evidence to justify a finding that he or she is not palpably unfit. *J.W.*, 807 N.W.2d at 445-46. On appeal, this court reviews de novo whether "a parent's evidence is capable of justifying a finding in his or her favor at trial." *Id.* at 446.

In rebutting the presumption of unfitness, the parent must produce sufficient evidence to "support a finding that the parent is suitable to be entrusted with the care of the children." *R.D.L.*, 853 N.W.2d at 137 (quotation omitted). "[T]he presumption is easily rebuttable" and lower than the clear and convincing evidence standard. *Id.* The district court views only the evidence produced by the parent to first ascertain whether the parent has produced sufficient evidence to rebut the presumption. *See id.* (describing the standard of review in terms of what evidence the *parent* produced). Whether the evidence satisfies the parent's burden of production is determined on a case-by-case basis. *Id.* Evidence that the parent engaged in services to alleviate problems from the prior proceeding is indicative of fitness, but is not dispositive. *See id.* (noting that evidence must be evaluated on a "case-by-case basis" to determine whether the parent is suitable to "be entrusted with the care of the child" (quotation omitted)); *J.W.*, 807 N.W.2d at 446 (describing a parent's participation in services as important evidence).

If the district court concludes that the parent has rebutted the presumption, the presumption disappears and the county must prove by clear and convincing evidence that the parent is palpably unfit to parent. *Id.* at 445. If the district court concludes that the presumption is not rebutted, the statutory ground of palpable unfitness is met. *Id.* at 447. Here, the district court relied solely on the statutory presumption and made no alternative conclusion on palpable unfitness based on all the evidence. Our review is thus limited to assessing whether C.K.W. produced sufficient evidence to rebut the presumption. We

7

review only the evidence C.K.W. presented at trial—in this case, her own testimony[1]—to determine whether she has presented sufficient evidence to "support a finding that the parent is suitable to be entrusted with the care of the children." *R.D.L.*, 853 N.W.2d at 137 (quotation omitted).

The district court in the 2009 termination proceeding concluded that C.K.W. was palpably unfit because C.K.W. (1) suffered from chemical-dependency problems; (2) failed to secure stable housing; (3) refused to participate in mental-health services; (4) was chronically unemployed; and (5) neglected her children and failed to understand the children's needs, development, and abilities. C.K.W. argues that she rebutted the presumption by overcoming her chemical dependency, maintaining adequate housing, seeking treatment for her mental-health issues, explaining her difficulty maintaining employment, and learning parenting skills.

---

[1] On this record, despite assuming that C.K.W.'s testimony regarding whether she was a suitable person to be entrusted with the care of her child was credible, we conclude that her testimony was inadequate to rebut the statutory presumption of palpable unfitness. Therefore, we have no occasion to address whether the district court should, in fact, have assessed the credibility of C.K.W.'s testimony when it addressed whether C.K.W. rebutted the presumption of palpable unfitness. *See Jacobson v. $55,900 in U.S. Currency*, 728 N.W.2d 510, 523 (Minn. 2007) (stating, when addressing rebuttal of a statutory presumption regarding forfeiture of property, that "[generally,] a district court should not engage in a qualitative evaluation or weighing of the evidence when deciding whether a claimant has produced sufficient evidence to rebut the statutory presumption[,]" but refusing "to adopt a per se rule prohibiting any consideration of witness credibility" because there might be cases in which "witness credibility may be important, or even essential, for example, when the claimant's only evidence is his own testimony, *and no reasonable fact finder would believe that testimony*" (emphasis added)).

*Chemical Dependency*

C.K.W. testified that she completed the chemical-dependency evaluations recommended by the county and that she is currently not using controlled substances. She admitted that she refused two urinalysis tests, but refused one because she was on her way to work. She acknowledged that she did not complete the treatment recommended by the chemical-dependency assessors and that she tested positive for marijuana several times, including once after her second assessment. C.K.W. explained that she did not attend the chemical-education class because she could not afford the $250 cost.

Substance use alone does not render a parent palpably unfit. *In re Welfare of Children of T.R.*, 750 N.W.2d 656, 663-64 (Minn. 2008). And sobriety following a previous termination of parental rights does not necessarily rebut the presumption. *See In re Welfare of Child of W.L.P.*, 678 N.W.2d 703, 710 (Minn. App. 2004) (affirming a district court's finding that a parent failed to rebut the presumption, despite the parent completing treatment programs, because of the parent's long history of substance abuse). Although C.K.W. testified to current sobriety, she has not participated in any programs that would help ensure her continued sobriety. C.K.W. acknowledged continuing to test positive for marijuana after her chemical-dependency assessments. Furthermore, C.K.W. produced no corroborating evidence showing that she would be able to maintain sobriety. For example, C.K.W. could have produced testimony of chemical-dependency counselors or evidence of ongoing treatment, which would show her efforts to maintain sobriety. *See id.* (concluding that the parent produced insufficient evidence of sobriety because she failed to call chemical-dependency counselors). While C.K.W.'s testimony of current sobriety is

significant evidence, C.K.W. failed to produce sufficient evidence to demonstrate that she would be able to maintain sobriety while caring for A.W.

*Housing Situation*

C.K.W. argues that she "lives in a small apartment in downtown Faribault" and had lived at that location since July 2015. But C.K.W. admitted at trial that she was evicted from that residence in February 2016. C.K.W. testified that she could live with a friend in Minneapolis or with A.W.'s paternal grandparents in Mississippi.

C.K.W.'s evidence that her housing situation has stabilized is insufficient. C.K.W. was evicted from her apartment during the course of trial. While C.K.W. testified about the alternatives available to her, she remained uncertain about which option she would pursue and her long-term plans to provide stable housing for A.W. C.K.W. did not produce sufficient evidence demonstrating her ability to provide stable housing for A.W.

*Mental-Health Issues*

C.K.W. testified that she began individual therapy "off and on" a month before trial and was prescribed medication for her depression and anxiety. She acknowledged that she refused to sign a release of information to allow the county to speak with her therapist. C.K.W. claimed that she has trust issues, which prevented her from obtaining treatment in the past, and that these trust issues can cause her to become "defiant and oppositional."

Mental-health problems alone are an insufficient basis for terminating parental rights. *In re Welfare of S.Z.*, 547 N.W.2d 886, 892 (Minn. 1996); *see also T.R.*, 750 N.W.2d at 661 (reaffirming that mental illness alone is not enough). C.K.W. produced evidence that she has made improvements in managing her mental health by seeking therapy—albeit

10

only a month before trial—and medication. C.K.W., however, produced no corroborating evidence from her therapist demonstrating that the mental-health treatment was working. *See W.L.P.*, 678 N.W.2d at 710 (requiring the production of similar evidence with respect to the parent's chemical dependency treatment). While C.K.W.'s testimony suggests that she is no longer refusing to cooperate with mental-health treatment, a lack of refusal to cooperate with mental-health treatment does not show that C.K.W. is a suitable custodian for her child. Therefore, C.K.W. failed to produce sufficient evidence to demonstrate that treatment has allowed her to overcome her mental-health issue to the extent necessary to parent A.W.

*Chronic Unemployment*

C.K.W. testified that she has had difficulty finding and maintaining employment because she suffers from tachycardia. C.K.W. admitted that she managed to maintain only temporary employment during the course of the proceedings. At the time of trial, C.K.W. had been unemployed since September 2015. She testified that she has had several interviews, but employers expressed concerns about her heart condition and potential absences from work. C.K.W. claimed to have an appointment scheduled with a cardiologist to obtain medication to treat her tachycardia, but had not yet done so at the time of trial. As a temporary substitute for employment, C.K.W. indicated that she could seek government assistance, but had not yet obtained any such benefits.

During the pendency of the petition, C.K.W. failed to maintain adequate employment. C.K.W. was aware of her health condition before trial, but failed to seek treatment, which she claimed was necessary for her ability to work. Based on these facts,

11

C.K.W. failed to produce sufficient evidence demonstrating her ability to maintain adequate employment.

*Parenting Skills*

C.K.W. testified that she puts her children before herself and has no concerns regarding A.W.'s safety if A.W. is returned to her care. She acknowledged that several visits were cut short due to the smell of cat urine on her bag, but claimed she took necessary precautions to protect the bag from the cats. C.K.W. stated that she brings age-appropriate foods to visits, but did admit that she once fed A.W. to the point of vomiting. C.K.W. also watched a video on child CPR at Pregnancy Options, but did not participate in other programs at either Pregnancy Options or any other service provider. C.K.W. also admitted that she did not provide the county with documentation that she had watched the child CPR video.

Occasional participation in parenting classes is insufficient to demonstrate an improvement in parenting skills. *In the Matter of the Welfare of D.L.R.D.*, 656 N.W.2d 247, 251 (Minn. 2003); *see also In re Welfare of Child of T.D.*, 731 N.W.2d 548, 554-55 (Minn. App. 2007) (concluding that the parent did not present sufficient evidence to support a finding of parental fitness where the parent attended such classes but struggled to feed the child and read the child's cues). While C.K.W. sought to improve her parenting skills, the evidence she produced suggests that she still experiences difficulties meeting the needs of A.W. C.K.W. admitted that the county had instructed her to correct the cat urine problem in the summer of 2015, but visitations were cancelled the week before trial because of the smell. C.K.W. attended no parenting classes or programs materially relevant

12

to the conditions that led to the 2009 termination of parental rights. Therefore, C.K.W.'s evidence does not sufficiently show that she has overcome the difficulties she experiences in responding to the needs of A.W.

Reviewing only C.K.W.'s testimony with respect to the bases for the previous termination of parental rights, C.K.W. did not produce sufficient evidence to support a finding that she is suitable to be entrusted with the care of her child. *See R.D.L.*, 853 N.W.2d at 137. C.K.W. produced evidence that she was addressing her mental-health issues through therapy and medication, but failed to produce evidence that this treatment was improving her ability to parent. She also produced some evidence that she is addressing her chemical dependency by her own testimony that she is currently sober. Overall, however, C.K.W.'s evidence demonstrated that, while she participated in some services, she still had trouble maintaining sobriety and responding to her child's needs, and continues to struggle with housing insecurity and chronic unemployment. The district court therefore did not err in concluding that C.K.W. failed to produce sufficient evidence to rebut the presumption that she was palpably unfit to parent A.W. *Id.*

**II.    The district court did not abuse its discretion in finding that termination of C.K.W.'s parental rights was in the best interests of the child.**

C.K.W. finally argues that the district court abused its discretion in finding that it was in A.W.'s best interests to terminate C.K.W.'s parental rights. This court reviews a district court's determination that termination is in a child's best interest for an abuse of discretion. *In re Welfare of Children of J.R.B.*, 805 N.W.2d 895, 901 (Minn. App. 2011).

13

A district court has not abused its discretion if its findings are supported by substantial evidence and are not clearly erroneous. *D.L.R.D.*, 656 N.W.2d at 251-52.

"The paramount consideration in all juvenile protection proceedings is the health, safety, and best interests of the child." Minn. Stat. § 260C.001, subd. 2 (2014). In assessing the child's best interests, the district court must balance "(1) the child's interest in preserving the parent-child relationship; (2) the parent's interest in preserving the parent-child relationship; and (3) any competing interest of the child." *In re Welfare of R.T.B.*, 492 N.W.2d 1, 4 (Minn. App. 1992). "Competing interests include such things as a stable environment, health considerations and the child's preferences." *Id.*

C.K.W. first argues that the district court failed to "make any Conclusions of Law that it was in the best interests of [A.W.] that [C.K.W.'s] parental rights be terminated." The district court's conclusions need not "go into great detail." *W.L.P.*, 678 N.W.2d at 711. The district court concluded in paragraph one of its conclusions of law that "the best interests of the Child require that the Court terminate Mother's parental rights." In making this conclusion, the district court relied on evidence that C.K.W. has never resided with A.W., A.W.'s needs are met in her current foster home, and C.K.W. failed to demonstrate her ability to parent A.W. The district court's thorough findings of fact support its otherwise short legal conclusion.

Next, C.K.W. argues that the trial court clearly erred in finding that it was in the best interests of A.W. to terminate C.K.W.'s parental rights because C.K.W. testified that she has no concerns regarding A.W.'s safety if returned to her care.

14

Based on substantial testimony from the social worker and guardian ad litem, the district court found that C.K.W. had not been a "full-time parent" to A.W, had difficulty addressing A.W.'s needs, and failed to properly participate in services to improve her parenting abilities. The district court identified numerous stability considerations favoring termination. The district court found that A.W. has bonded with her foster family and that the foster parents meet all of A.W.'s physical, emotional, and educational needs. Furthermore, the district court made substantial findings demonstrating that C.K.W. would struggle to provide a stable home for A.W. due to her unemployment, mental-health problems, and history of chemical dependency. *See D.L.R.D.*, 656 N.W.2d at 251-52 (affirming the district court's decision that the appellant's "problems with improving her parenting skills, her mental health and drug abuse, and her other substantial personal issues" showed that termination was in the best interests of the child).

Because the district court based its findings on substantial evidence and its findings are not clearly erroneous, the district court did not abuse its discretion in concluding that termination of C.K.W.'s parental rights is in the best interests of A.W. *Id.*

**Affirmed.**